Bill and Jean M. Smith v. Commissioner.
Smith v. Commissioner
Docket No. 53679.
United States Tax Court
T.C. Memo 1956-30; 1956 Tax Ct. Memo LEXIS 265; 15 T.C.M. (CCH) 139; T.C.M. (RIA) 56030; February 9, 1956
*265 Where a partnership has consistently capitalized breeding stock, $ held, immature ewes on hand at the end of the year which were intended to be used as a part of the breeding herd are not to be included in inventory as of the end of the year; and, held, further, no change is required on the basis of certain breeding ewes held by the partnership on January 1, 1951. Oscar I. Koke, C.P.A., First National Bank Building, Boise, Ida., for the petitioners. John H. Welch, Esq., for the respondent. MULRONEY Memorandum Opinion MULRONEY, Judge: The Commissioner determined a deficiency of $6,720.31 in income tax for the year 1951. The issues are (1) whether certain immature ewes held by the petitioners on December 31, 1951, are properly *266 includible in inventory, or, as the respondent contends, are to be capitalized as part of the breeding herd, and (2) whether the basis for depreciation purposes in 1951 of certain mature breeding ewes, acquired in prior years, has been correctly determined. All of the facts have been stipulated and they are incorporated herein by this reference. [Findings of Fact] The petitioners, husband and wife, are residents of Boise, Idaho. They filed their joint income tax return for the year 1951 with the then collector of internal revenue for the district of Idaho. Hereinafter, we shall refer to Bill Smith as the "petitioner". The Wood Creek Sheep Company, a partnership, was organized on January 1, 1950, by the petitioner and A. T. Cook, to engage in the business of buying, raising and selling livestock, as well as wool growing and farming. The partnership succeeded to the sole proprietorship business operated by the petitioner in prior years under the name of Wood Creek Sheep Company. The partnership raises black-faced meat type lambs for sale as slaughter lambs for the early markets. Other sources of income are the sale of wool taken from the breeding ewes, the sale of white-faced *267 ewe lambs which it is decided not to retain for use as breeding animals, and the sales of animals from the breeding herd. In some years the whitefaced ewe lambs are raised and in other years are purchased. White-faced lambs are normally used for breeding purposes and for the production of wool, and are not normally sold for slaughter. The partnership is also in the busines of raising cattle. In 1951 the partnership purchased the following white-faced ewe lambs: Date
Number
Cost
Per Head
August 13, 1951
802
$31,310.40
$39.04
Sept. 20, 1951
1,335
50,688.05
37.97 All of the foregoing ewe lambs were of the approximate age of six months when purchased, and they were immature as of December 31, 1951. On December 12, 1951, the partnership sold 260 of these ewe lambs for $5,710, and there remained 1,877 ewe lambs on hand at December 31, 1951, out of the 2,137 ewe lambs purchased in 1951. The fair market value of the 1,877 ewe lambs on December 31, 1951, was $30 per head. The partnership, apparently regarding these ewe lambs as an inventory item, valued them at the lower of cost or market value and claimed a $15,538.41 loss in determining its income from the *268 year's operations. The respondent disallowed this inventory loss on the ground that the ewe lambs in question were a part of the partnership's breeding herd on December 31, 1951, and not inventory items. [Opinion] We agree with the respondent that the 1,877 ewe lambs on hand at the end of 1951 were not an inventory item and that the loss claimed by the petitioner in reducing this stock to the lower of cost or market value on December 31, 1951, should be disallowed. It is clear from the regulations that a farmer may include in inventory any stock acquired for breeding purposes instead of treating such breeding stock as a capital asset subject to annual depreciation, provided that the practice adopted is followed consistently. Regulations 111, Sec. 29.22(a)-7. Here, the consistent practice of the partnership has been, since its inception in 1950, to treat breeding stock as a capital asset and to take annual deductions for depreciation. Breeding stock was also capitalized by the petitioner in the years prior to 1950, when the business was operated by him as a sole proprietorship. In 1952, the year following the one in controversy, the partnership designated the 1,877 ewe lambs *269 in dispute as part of the breeding herd and took a deduction for depreciation on such stock in the partnership income tax return filed for that year. The petitioner argues that the 1,877 ewe lambs on hand at the end of 1951 were not breeding stock because at that time they were still immature animals less than twelve months old. In James M. McDonald, 23 T.C. 1091, 1099, we said: "It is not necessary that an animal reach maturity and produce a calf for it to fall within the wording of that section. The animal need not have been actually put to the prescribed use if it was in fact held for the purpose of being put to that use. * * *" Nor is it correct that the stock here cannot be regarded as breeding stock simply because some of it may be sold before it attains maturity. James M. McDonald, supra. Whether or not the white-faced ewe lambs on hand by the partnership at the end of 1951 were a part of the breeding herd is a question of fact. The ewes in dispute here were of the white-faced variety, and it has been stipulated that "White-face lambs are normally used for breeding purposes and the production of wool, and are not normally sold for slaughter. *270 " This stock was actually designated by the partnership as a part of the breeding herd in 1952 in the partnership income tax return for that year. On the basis of the record before us, we hold that the 1,877 ewe lambs held by the partnership on December 31, 1951, were held for the purpose of augmenting the breeding herd, and that, consistent with the practice of the partnership, such lambs should not have been inventoried at the end of the year. We do not believe that the petitioner has carried his burden of proof in showing that the determination of the respondent was erroneous. The petitioner raises a second issue. On the records of the partnership on January 1, 1951, there were 1,890 breeding ewes purchased on September 1, 1948 at a cost of $30 per head. These were inventoried at the end of the year 1948 at $25 per head, the lower of cost or market. In 1949 the petitioner, then operating the business as a sole proprietorship, elected to change his method of reporting income and claimed depreciation on the breeding herd. The basis for the animals was $25 per head, the last inventory value thereof. Sec. 113(a)(1) of the Internal Revenue Code of 1939. No objection was made by the *271 respondent. Indeed, the alternatives of treating the breeding herd as inventory or as a capital asset were open to the petitioner under section 29.22(a)-7 of Regulations 111. On the partnership return of 1950, the 1,890 ewes were shown with the notation "Converted to depreciation basis January 1, 1949", and a deduction for depreciation, based upon the basis of $25 per head, was taken by the partnership in its income tax return for that year. A deduction for depreciation was also taken in 1951 on these animals. Now the petitioner makes the contention that it was erroneous to inventory the 1,890 ewes on December 31, 1948, valuing them at $25 per head, the lower of cost or market value; that consequently the basis of these animals on hand January 1, 1951 should be the original cost, $30 per head, instead of the lower market value applied in the prior year, 1948. There is no merit in this argument. The 1,890 ewes were properly inventoried in 1948 as a part of the breeding herd, and the election to change to a method of capitalizing the animals in 1949 was also proper. Since 1950, the partnership has consistently taken a depreciation deduction on these animals, using a basis of $25 per *272 head. There is no authority, either in the statutes or in the regulations, for the petitioner now to adopt, in 1951, the original cost basis of the ewes. On the other hand, Sec. 113(a)(1) of the 1939 Internal Revenue Code specifically provides that "the basis shall be the last inventory value thereof", which, in this case, was $25 per head. We hold that the correct basis of the 1,890 ewes on hand January 1, 1951, was $25 per head. Decision will be entered for the respondent.